**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**PAUL GATTO & ROBERT SMITH**

                               Plaintiffs,

      -against-

**SENTRY SERVICES, INC., SENTRY SERVICES,**
**LTD., MAYRICH CONSTRUCTION CORP., JOHN**
**GIACOPELLI, RICHARD SHAW, & RICHARD**
**GIACOPELLI**

                          Defendants.

No. 13 CIV _____ (\_\_\_)

**CLASS ACTION**
**COMPLAINT AND**
**JURY DEMAND**

Plaintiffs, by their undersigned attorneys for their Class Action Complaint, allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery as follows:

**NATURE OF THE ACTION**

1.     Plaintiffs bring this action as a Class Action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure on behalf of all persons who are or were participants of the Sentry Services, Ltd. or Sentry Services, Inc. (collectively, conjunctively, and/or disjunctively, "Sentry") Employee Stock Ownership Plan (the "Sentry ESOP") during the period from April 29, 2003 to the present (the "Class" or "Sentry ESOP Participants").  Excluded from the Class are any principals of Sentry or Mayrich Construction Corp. ("Mayrich").

2.     The Sentry ESOP was established on April 29, 2003 and is a single-employer stock option plan.  Upon information and belief, the participants of the Sentry ESOP are comprised of the employees of Mayrich.

3.      Despite the Sentry ESOP being in existence since 2003, upon information and belief, no information regarding this plan has ever been provided to its participants, save for a single account statement Mayrich relatively recently inadvertently distributed to the Sentry ESOP participants.

4.      It appears the existence of the Sentry ESOP was purposefully and carefully concealed for many years from its participants pursuant to, upon information and belief, a scheme by Defendants to reap the tax benefits of maintaining the Sentry ESOP while avoiding the concomitant expense of making distributions to Sentry ESOP participants.

**PARTIES**

5.      Plaintiff Paul Gatto is a former employee of Mayrich and a participant in the Sentry ESOP.

6.      Plaintiff Robert Smith (together with Paul Gatto, "Plaintiffs") is a former employee of Mayrich and a participant in the Sentry ESOP.

7.      Mayrich Construction Corp. ("Mayrich") is a New York corporation with its principal place of business at 1141 Oakpoint Avenue, Bronx, NY 10474.

8.      Sentry Services, Ltd., a New York corporation, and Sentry Services, Inc. (collectively, conjunctively and/or disjunctively, "Sentry") have their principal place of business at 1141 Oakpoint Avenue, Bronx, NY 10474.

9.      John Giacopelli is a Principal of Mayrich and the Administrator and Plan Sponsor of the Sentry ESOP.

10.     Richard Giacopelli is a Principal of Mayrich and an agent of Sentry who, upon information and belief, exercised discretionary authority or discretionary control respecting management of the Sentry ESOP.

2

11.     Richard Shaw (along with Mayrich, Sentry, John Giacopelli, and Richard Giacopelli, "Defendants") is an agent of Sentry who, upon information and belief, advised in the creation of the Sentry ESOP, was involved in its ongoing management, and otherwise exercised discretionary authority or discretionary control respecting management of the Sentry ESOP.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) as well as 28 U.S.C. §§ 1331, 1367.  Venue is properly laid in this district pursuant to 29 U.S.C. § 1132(e)(2) because the primary administration of the Sentry ESOP took place in this district, some or all of the ERISA and state law claim breaches for which relief is sought occurred in this district, and one or more of the Defendants may be found in this district.  Venue is also proper in this district pursuant to 28 U.S.C. § 1391.

## CLASS ACTION ALLEGATIONS

13.     The Class consists of all current and former participants of the Sentry ESOP during the period from April 29, 2003 to the present.  Excluded from the Class are any principals of Sentry or Mayrich.  Upon information and belief, the class includes all current and former employees of Mayrich employed at Mayrich at any point between April 29, 2003 and the present, which could amount to hundreds of individuals.  Also, an indeterminate number of Mayrich's former employees may have moved outside of this District to other parts of the United States.

14.     The members of the Class are so numerous that joinder of all Class members is impracticable.  The exact number of Class members is not presently known to Plaintiffs, but can readily be determined by appropriate discovery.

15.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in complex civil litigation.  Plaintiffs have no interests that are adverse or antagonistic to those of the Class.

16.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Because the damages suffered by many individual Class members may be relatively small, the expense and burden of individual litigation may make it virtually impossible for some of the Class members to individually seek redress for the wrongful conduct alleged herein.

17.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.      whether Defendants violated the Class members' rights by withholding and/or attempting to withhold from them the existence of the Sentry ESOP;

b.      whether Defendants violated the Class members' rights by failing to provide the Class members with the notices required pursuant to Title 29, Chapter 18 of the United States Code; and

c.      whether Defendants violated the Class members' rights by withholding from them property located in their Sentry ESOP accounts.

18.     Separate actions by Sentry ESOP participants would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants and the administration of the Sentry ESOP.  Further, separate actions by Sentry ESOP participants on the common questions of fact and law raised in this class action, as a practical matter, would be dispositive of the interests of the other

members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

19.     Defendants have also acted and refused to act on grounds that apply generally to the Class, including by failing to provide the Class members with the notices required pursuant to Title 29, Chapter 18 of the United States Code, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

20.     Plaintiffs envision no difficulty in the management of this litigation as a class action.

## FACTS

21.     Mayrich's website states that it the largest excavation and foundation company in New York City, listing among its projects the Trump World Tower, AOL/Time-Warner Headquarters, and Bloomberg Headquarters.  It further provides that Mayrich's principals are John Giacopelli, Joseph Scott and Richard Giacopelli, and that its address is 1141 Oak Point Avenue, Bronx, NY 10474 and phone number is 718-378-2600.

22.     Upon information and belief, all of Mayrich's employees employed at Mayrich at any point between April 29, 2003 and the present have been enrolled as participants in the Sentry Employee Stock Option Plan ("Sentry ESOP").  The Sentry ESOP is a single-employer plan and its administrator is John Giacopelli, a principal of Mayrich, and its phone number and address are identical Mayrich's phone number and address.

## I.     THE SENTRY ESOP

23.     Sentry has on an annual basis filed Form 5500, Annual Return/Report of Employee Benefit Plan, for the Sentry ESOP.  The Sentry ESOP's most recent such filing is for the plan year April 1, 2011 through March 31, 2012 (the "Sentry 2011 Annual Return").

24.     The Sentry 2011 Annual Return lists John Giacopelli as the Sentry ESOP's Administrator and Plan Sponsor.  Upon information and belief, John Giacopelli has been the administrator of the Sentry ESOP continuously since its inception on April 29, 2003.  John Giacopelli is also one of the three principals of Mayrich and, upon information and belief, the most influential of Mayrich's three principals.

25.     The Sentry 2011 Annual Return lists the Sentry ESOP's phone number as 718-378-2600 and address as 1141 Oak Point Avenue, Bronx, NY 10474.  This phone number and address are identical to the phone and address of Mayrich.  The Sentry 2011 Annual Return also provides that the Sentry ESOP is a single-employer plan.  Upon information and belief, the Sentry ESOP participants are the current and former employees of Mayrich.

26.     The Sentry 2011 Annual Return further provides that the Sentry ESOP has an effective date of April 29, 2003 and had net plan assets of $6,482,000 and 91 participants on April 1, 2011 and net plan assets of $8,789,000 and 104 participants on March 31, 2012.  This filing also reveals that during the 2011 filing period, the Sentry ESOP had 33 "retired or separated participants entitled to future benefits" and that there were only two "participants that terminated employment during the plan year with accrued benefit that were less than 100% vested."

27.     The annual return for Sentry Services for 2010 shows 91 participants as of April 1, 2010 and the annual return for Sentry Services for 2009 shows 102 participants as of April 1, 2009.  These statements also indicate that there were 26 participants in the 2010 reporting period and 33 participants in the 2009 reporting period that were "retired or separated participants entitled to future benefits."

## II.   DEFENDANTS CONCEAL SENTRY ESOP TO ITS PARTICIPANTS

28.   Paul Gatto was employed as a constructor worker at Mayrich for approximately ten years with his last date of employment on February 15, 2013, when he retired due to a health related complication.  Robert Smith was also employed as a construction worker at Mayrich for approximately thirteen years with his last date of employment on March 7, 2012, when he was forced to leave Mayrich due to the abusive behavior, such as regularly being called "a piece of shit," by Mayrich principal Joseph Scott.  Joseph Scott and another Mayrich principal, Richard Giacopelli, similarly regularly abused Paul Gatto by, *inter alia*, calling him an "asshole" and "a piece of shit."

29.   Attached to one of Paul Gatto's monthly salary checks was a statement entitled "Sentry Services, Ltd. Employee Stock Ownership Plan [-] Participant Account Statement" for the plan year April 1, 2008 through March 31, 2009 ("Paul Gatto's Sentry ESOP 2009 Account Statement").  Despite the Sentry ESOP being in existence since 2003, prior to receiving his Sentry ESOP 2009 Account Statement, Paul Gatto had no knowledge of the existence of the Sentry ESOP or that he had any stock ownership retirement account.  Paul Gatto's Sentry ESOP 2009 Account Statement listed his total vested amount in the Sentry ESOP as $56,146.05.

30.   Paul Gatto's Sentry ESOP 2009 Account Statement also provided, *inter alia*: "This is a summary of the annual report for Sentry Services, Inc. Employee Stock Ownership Plan … for 04/01/2008 through 03/31/2009.  The annual report has been filed with the Employee Benefits Security Administration, as required under the Employee Retirement Income Security Act of 1974 (ERISA). …  Benefits under the plan are provided by a trust.  …  A total of 87 persons were participants in or beneficiaries of the plan at the end of the plan year …  The value

of plan assets, after subtracting liabilities of the plan, was $6,214,722 as of 03/31/2009, compared to $7,156,498 as of 04/01/2008."

31.     Similarly, attached to one of Robert Smith's monthly salary checks was a statement entitled "Sentry Services, Ltd. Employee Stock Ownership Plan [-] Participant Account Statement" for the plan year April 1, 2008 through March 31, 2009 ("Robert Smith's Sentry ESOP 2009 Account Statement").  Again, despite the Sentry ESOP being in existence since 2003, prior to receiving his Sentry ESOP 2009 Account Statement, Robert Smith had no knowledge of the existence of the Sentry ESOP or that he had any stock ownership retirement account.  Robert Smith's Sentry ESOP 2009 Account Statement indicated that his vested amount in the Sentry ESOP was approximately $64,000.

32.     Shortly after receiving his Sentry ESOP 2009 Account Statement and upon seeing his boss Richard Giacopelli in the lunch trailer, Paul Gatto asked Richard Giacopelli about this statement and the Sentry ESOP.  Richard Giacopelli became very irritated with Paul Gatto and yelled at him that "it is not your money, forget about it," following which the conversation was summarily terminated by Richard Giacopelli.

33.     Robert Smith, upon seeing his boss, Joseph Scott, also asked him about his Sentry ESOP 2009 Account Statement, to which Robert Smith responded, "I don't know, I have no idea."

34.     Based on conversations Paul Gatto and Robert Smith had with their co-workers at Mayrich shortly after receiving statements for their Sentry ESOP accounts, it appears that most, if not all, of Mayrich's other employees also received a statement for their Sentry ESOP account stapled to one of their salary checks (collectively, the "Sentry ESOP 2009 Account Statements").  Based on these conversations, and despite the fact that the Sentry ESOP had been created in

2003, it appears that prior to receiving the Sentry ESOP 2009 Account Statements, none of Mayrich's employees were ever aware of Sentry, the Sentry ESOP or that they had any stock ownership plan account.

35.     It appears that the Sentry ESOP 2009 Account Statements were "mistakenly" distributed to Mayrich's employees and that after this one-time "mistaken" issuance of these statements, no further account statements or information regarding the Sentry ESOP was ever provided to any of the Sentry ESOP participants.

36.     Upon information and belief, prior to the issuance of the Sentry ESOP 2009 Account Statements, Mayrich's long time accountant had retired and a new accountant had been hired, and that it was the newly hired accountant that -- apparently unaware of Defendants' scheme to hide the existence of the Sentry ESOP from its participants -- "mistakenly" issued the Sentry ESOP 2009 Account Statements to the Sentry ESOP participants.

37.     Upon information and belief, the Sentry ESOP provided tax benefits to Mayrich, Sentry, Richard Giacopelli, John Giacopelli and/or John Does, and these tax benefits were sought to be obtained without the concomitant downside of paying out any funds from the Sentry ESOP to any of its participants.  Upon information and belief, to accomplish this scheme, the existence of the Sentry ESOP needed to be concealed from its participants.

**III.     PLAINTIFFS' REQUESTS FOR FUNDS & INFORMATION IGNORED**

38.     Paul Gatto was diagnosed with sarcoidosis which forced and precipitated his retirement from Mayrich, where his last day of employment was February 15, 2013.  Due to Paul Gatto's loss of income, his need for access to retirement funds became acute and Paul Gatto therefore again sought to inquire about his Sentry ESOP 2009 Account Statement.

39.     To that end, Paul Gatto called Richard Shaw, whom Paul Gatto was advised by Mayrich was involved in the creation and management of the Sentry ESOP, to inquire about this statement.  Richard Shaw, contrary to what Richard Giacopelli had previously stated, informed Paul Gatto that he could obtain the vested funds in his Sentry ESOP account when he reached the age of fifty-five or when he retired from Mayrich.  Paul Gatto then advised Richard Shaw that he in fact had retired due to a medical condition and therefore would like to have his vested funds transferred to him.  Richard Shaw reacted with surprise to this information and advised that he would need to talk with John Giacopelli, because it was John Giacopelli that would need to write Paul Gatto his check, and would therefore call Paul Gatto back the next day.  Richard Shaw never called Paul Gatto back the next day or at any other time.

40.     On June 26, 2013, the undersigned sent a letter to the administrator for the Sentry ESOP, John Giacopelli stating, *inter alia*, that: "Mr. Gatto has on a number of occasions requested access to and transfer of assets from his account at … Sentry ...  These requests have never been honored. ….  It is hereby demanded that you forthwith honor Mr. Gatto's requests to transfer his funds as well as immediately provide copies of Sentry's full annual reports for the last five years, the Sentry plan itself, the Sentry trust documents, and Mr. Gatto's most recent account statement."

41.     The June 26, 2013 letter further stated that: "Failure to timely respond to the foregoing will result in legal action, including for, among other causes of action, violations of numerous federal ERISA laws, conversion, fraud and conspiracy to commit fraud, including against John Giacopelli, Richard Shaw and Richard Giacopelli in their personal capacities.  It also appears that each of these individuals are liable for Civil RICO by the multiple felonies committed by their transparent scheme of deriving financial/tax benefits from an ESOP they

10

attempted to hide from its beneficiaries..."  Finally, this letter stated that: "If you would like to discuss this matter, you can reach me at 212-532-1091."  No response to the June 26, 2013 letter was ever received.

42.     A follow-up letter was sent on July 19, 2013, making the same demands as the June 26, 2013 letter, this time also on behalf of Robert Smith, adding that: "It behooves you or if you are represented by counsel, your attorney, to immediately call me [to] discuss this matter at 212-532-1091."  No response to the July 19, 2003 letter was ever received.

43.     A final letter was sent on August 5, 2013, referencing the demands in the letters of June 26, 2013 and July 19, 2013 and stating that it "renews these demands and requests a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the Sentry ESOP plan is established or operated.  You are required to furnish each of these pursuant to 29 U.S.C. § 1024(b)(4). ….  As you have not provided any responses to our letters of June 26, 2013 and July 19, 2013, nor any explanation for the conduct specified therein, it is anticipated you will similarly not respond to this request; hence, if you intend to respond, please advise the undersigned upon receipt of this letter."  No response was received to the August 5, 2013 letter.

44.     No response to any of the foregoing requests was ever received even though the Sentry ESOP 2009 Account Statement received by Paul Gatto provided that: "You have the right to receive a copy of the full annual report, or any part thereof, on request. …  To obtain a copy of the full annual report, or any part thereof, write or call the office of Sentry Services, Inc., who is Plan Administrator at 1141 Oakpoint Avenue, Bronx, NY, 10474, (718) 378-2600.  There will be no charge for copying the report in whole or in part. …  You also have the right to receive from the plan administrator, or request and at no charge, a statement of the assets and liabilities of the

11

plan and accompanying notes, if any, or a statement of income and expenses of the plan and accompanying notes, if any, or both."

**CAUSES OF ACTION**

### COUNT I
### 29 U.S.C. § 1132(a)
### ALL DEFENDANTS

45.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46.     Pursuant to 29 U.S.C. § 1132(a): "A civil action may be brought … by a [ESOP] participant … [i] to recover benefits due to him under the terms of his plan, [ii] to enforce his rights under the terms of the plan, … [iii] to clarify his rights to future benefits under the terms of the plan … [iv] to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or … [v] to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

47.     The Sentry ESOP was established in 2003. John Giacopelli is the administrator of the Sentry ESOP, and Richard Giacopelli and Richard Shaw had roles in administering the Sentry ESOP as discussed, *inter alia*, in paragraphs 92 and 93, respectively. Sentry was the entity through which the Sentry ESOP was operated and, upon information and belief, Mayrich along with Sentry, John Giacopelli, Richard Giacopelli, and/or John Does improperly enjoy the tax benefits of maintaining the Sentry ESOP while illegally concealing the existence of the Sentry ESOP from its participants in order to avoid making distributions to the Sentry ESOP participants.

48.     Upon information and belief, Defendants sought to conceal the existence of the Sentry ESOP plan from its participants, including by failing to provide to participants any of the

12

information or notices required under 29 U.S.C. § 1021 *et seq.* (save for the inadvertently issued Sentry ESOP 2009 Account Statements) including failing to provide each Sentry ESOP participant, *inter alia*:

> (i)  a **summary plan description** for the Sentry ESOP and provide updates to same periodically (29 U.S.C. §§ 1021(a)(1), 1024(b), 1022(a)-(b));
>
> (ii)  the **financial statements and schedules** for the Sentry ESOP on an annual basis  (29 U.S.C. §§ 1021(a)(2), 1024(b)(3)); and
>
> (iii)  an **account statement** for their Sentry ESOP account at least annually (29 U.S.C. §§ 1021(a)(2), 1025(a)-(c).)

(The detailed information that must be included in a summary plan description, the financial statements and schedules, and account statements are provided for in Title 29 sections 1022(a)-(b), 1024(b)(3), and 1025(a)-(c), respectively, which requirements are incorporated herein by reference.)

49.    Upon information and belief, none of the Sentry ESOP participants ever received any of the information required pursuant to 29 U.S.C. § 1021 *et seq.*, including never receiving a summary plan description for the Sentry ESOP, annual financial statements and schedules for the Sentry ESOP, or at least annual account statements for their Sentry ESOP accounts, save for the apparently inadvertently distributed Sentry ESOP 2009 Account Statements.

50.    Not only were Sentry ESOP participants deprived of their legal right to receive these notices and statements, but they were harmed by having critical information regarding the Sentry ESOP, indeed the very existence of the Sentry ESOP, withheld from them and hence preventing participants from taking steps to secure their rights under their retirement plan, including securing their rights to the property in their Sentry ESOP accounts.

51.     The Sentry ESOP plan participants, current and former, have between zero and a one hundred percent vested entitlement to the property in their respective Sentry ESOP account. Upon information and belief, each Sentry ESOP participant is entitled to withdraw her or his vested property, *inter alia*, upon retiring from Mayrich or reaching the age of fifty-five.   Upon information and belief, none of the Sentry ESOP participants entitled to withdraw their vested funds have received these funds.  Having failed to receive almost any of the required notices and information regarding their accounts, most Sentry ESOP participants are probably unaware of the existence of their account, let alone the current status of their Sentry ESOP account or their rights regarding their Sentry ESOP account, including any right to withdraw property from their Sentry ESOP account.

52.     Upon information and belief, even those seeking to withdraw funds from their Sentry ESOP accounts have been stonewalled by Defendants.  For example, despite the fact that Paul Gatto had retired from Mayrich, and that Richard Shaw had indicated to Paul Gatto that he is entitled to his account funds, Paul Gatto's requests to withdraw funds from his Sentry ESOP account have been ignored.  Paul Gatto has not even been able to obtain from Sentry a summary plan description for the Sentry ESOP, financial statements for the Sentry ESOP, or his most recent account statement for his Sentry ESOP account, all of which Paul Gatto is required to receive automatically.  Paul Gatto's attempt to even discuss his Sentry ESOP account was in fact met with hostility by Richard Giacopelli who advised him it was not his money and to forget about his account.

53.     Upon information and belief, there are numerous Sentry ESOP participants who have absolutely no knowledge of the existence of the Sentry ESOP, or their right to distributions from their Sentry ESOP account, due to Defendants active concealment of this plan from its

participants.  Upon information and belief, due to the cyclical nature of the industry in which
Mayrich operates, the number of Mayrich employees can vary materially from year to year,
which in turn causes a fluctuation in the number of Sentry ESOP participants, and hence there
are likely numerous Sentry ESOP participants that retired prior to the inadvertently distributed
Sentry ESOP 2009 Account Statements and others that retired thereafter but who have otherwise
remained unaware of their rights to the property in their Sentry ESOP account due to Defendants
active, including by intimidation, concealment of the Sentry ESOP from its participants.  For
example, Paul Gatto's request for information regarding his Sentry ESOP 2009 Account
Statement garnered a response from his boss of "it is not your money, forget about it," and, upon
information and belief, current Mayrich employees would, at the least, fear losing their
employment if they sought to take legal action to recover funds in their Sentry ESOP account.

54.    There may be additional violations of 29 U.S.C. § 1132 due to, *inter alia*,
Defendants failure to follow the terms of the Sentry ESOP plan, but Plaintiffs have been unable
to assess what additional violations exist since Sentry has, in violation of  *inter alia* 29 USC §
1024(b)(4) failed to provide "copies of Sentry's full annual reports for the last five years, the
Sentry plan itself, the Sentry trust documents, and Mr. Gatto's most recent account statement" as
requested on June 24, 2013 and July 19, 2013, as well as failing to respond to a similar request
on August 5, 2013 for "a copy of the latest updated summary, plan description, and the latest
annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other
instruments under which the Sentry ESOP plan is established or operated."

55.    Hence, the undersigned was compelled to file an action without the benefit of the
foregoing documents and upon receipt and review of these documents, additional grounds for
relief may exist under 29 U.S.C. § 1132(a) which permits each Sentry ESOP participant "[i] to

recover benefits due to him under the terms of his plan, [ii] to enforce his rights under the terms of the plan, … [iii] to clarify his rights to future benefits under the terms of the plan … [iv] to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or … [v] to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

56.     By reason of the foregoing, the Class members are entitled to, *inter alia*, (i) withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their Sentry ESOP account, (ii) damages resulting from violations of their rights under Title 29, Chapter 18, (iii) prejudgment and post judgment interest, and (iv) attorney's fees.

**COUNT II**
**29 U.S.C. § 1132(c)**
**JOHN GIACOPELLI**

57.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58.     Title 29 U.S.C. § 1132(c) provides, *inter alia*, that: "Any administrator … who fails to meet the requirements of … section 1025 (a) of this title with respect to a participant or beneficiary … may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure …, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation … with respect to any single participant … shall be treated as a separate violation."

59.     Section 1025(a) in turn requires that the administrator of the Sentry Plan provide at least an annual account statement to each of Sentry ESOP participant (and provide a quarterly

16

account statements to each participant if the participant has the right to direct his or her own account under the Sentry ESOP plan).

60. Upon information and belief the Sentry ESOP administrator has failed to provide an annual (or, if one is required, quarterly) account statement to any of the Sentry ESOP participants since the inception of the Sentry ESOP in 2003, save for the Sentry ESOP 2009 Account Statements. Thus, the administrator of the Sentry ESOP, John Giacopelli, is personally liable up to:

        i.     $100 *multiplied* by the number of days the account statement for the period ending March 31, 2004 has been overdue *multiplied* by the number of Sentry ESOP participants entitled to receive this statement;

        ii.     $100 *multiplied* by the number of days the account statement for the period ending March 31, 2005 has been overdue *multiplied* by the number of Sentry ESOP participants entitled to receive this statement;

        iii.    $100 *multiplied* by the number of days the account statement for the period ending March 31, 2006 has been overdue *multiplied* by the number of Sentry ESOP participants entitled to receive this statement;

        iv.     $100 *multiplied* by the number of days the account statement for the period ending March 31, 2007 has been overdue *multiplied* by the number of Sentry ESOP participants entitled to receive this statement;

        v.     $100 *multiplied* by the number of days the account statement for the period ending March 31, 2008 has been overdue *multiplied* by the number of Sentry ESOP participants entitled to receive this statement;

vi.  $100 *multiplied* by the number of days the account statement for the period ending March 31, 2010 has been overdue *multiplied* by the number of Sentry ESOP participants entitled to receive this statement;

vii.  $100 *multiplied* by the number of days the account statement for the period ending March 31, 2011 has been overdue *multiplied* by the number of Sentry ESOP participants entitled to receive this statement;

viii.  $100 *multiplied* by the number of days the account statement for the period ending March 31, 2012 has been overdue *multiplied* by the number of Sentry ESOP participants entitled to receive this statement; and

ix.  $100 *multiplied* by the number of days the account statement for the period ending March 31, 2013 has been overdue *multiplied* by the number of Sentry ESOP participants entitled to receive this statement.

61.  Pursuant to 29 U.S.C. § 1132(c), John Giacopelli, as the administrator of the Sentry ESOP, is also personally liable for such other relief as the Court deems proper for his failure to provide account statements to its participants in, upon information and belief, every year since the inception of the Sentry ESOP in 2003, save for the apparently unintentionally distributed Sentry ESOP 2009 Account Statements.

62.  The administrator of the Sentry ESOP is similarly personally liable in the amount of up to $100 a day per violation, and for such other relief as the Court deems proper, under Title 29 U.S.C. § 1132(c) for failing to provide to the Sentry ESOP participants any of the notices referenced in 29 U.S.C. § 1132(c)(1) and (c)(3) which they are required to receive (including notices required pursuant to Title 29 sections: 1021(f); 1082(d)(12)(E); 1021(d), (e)(1) and (e)(2); and, 1166(a)(1) and (4)).

18

63.     By reason of the foregoing each Class member is entitled to, *inter alia*, (i) receive payment in the amount of up to $100 per day for each day that each account statement such Class member is entitled to receive has been overdue as well as any further relief the Court deems proper, (ii) receive payment in the amount of up to $100 per day for each day that each notice referenced in 29 U.S.C. § 1132(c)(1) and (c)(3) and required to be provided to the Sentry ESOP participants is overdue, as well as any further relief the Court deems proper, and (iii) attorney's fees.

## COUNT III
### CONVERSION
### DEFENDANTS

64.     Plaintiff hereby repeats and re-alleges the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

65.     The Sentry ESOP was established in 2003.  John Giacopelli is the administrator of the Sentry ESOP and Richard Giacopelli and Richard Shaw had roles in administering the Sentry ESOP as discussed, *inter alia*, in paragraphs 92 and 93, respectively.   Sentry was the entity through which the Sentry ESOP was operated and, upon information and belief, Mayrich along with Sentry, John Giacopelli, Richard Giacopelli, and/or John Does improperly enjoy the tax benefits of maintaining the Sentry ESOP while illegally concealing the existence of the Sentry ESOP from its participants in order to avoid making distributions to the Sentry ESOP participants.

66.     Moreover, if the Sentry ESOP participants never exercise their stock options, the existing owners of this stock benefit by not having their ownership value or interest diluted. Here, upon information and belief, Mayrich is owned by John Giacopelli, Joseph Scott, and Richard Giacopelli, and the value of the Sentry ESOP accounts was, at least in part, based on

options in the stock of Mayrich.  Hence, upon information and belief, Defendants have avoided

any dilution of John Giacopelli, Joseph Scott, and Richard Giacopelli's interest in Mayrich by

fraudulently concealing the existence the Sentry ESOP from its participants and thereby

converting the property in the Sentry ESOP accounts.

      67.    Upon information and belief, there are also numerous Sentry ESOP participants

who have absolutely no knowledge of the existence of the Sentry ESOP, or their right to

distributions from their Sentry ESOP account, due to Defendants active concealment of this plan

from its participants and their retirement from Mayrich prior to the distribution of the Sentry

ESOP 2009 Account Statements.  Upon information and belief, due to the cyclical nature of the

industry in which Mayrich operates, the number of Mayrich employees can vary materially from

year to year, which in turn causes a fluctuation in the number of Sentry ESOP participants, and

hence there are likely numerous Sentry ESOP participants that retired prior to the inadvertently

distributed Sentry ESOP 2009 Account Statements and others that retired thereafter but who

have otherwise remained unaware of their rights to the property in their Sentry ESOP account

due to Defendants active, including by intimidation, concealment of the Sentry ESOP from its

participants.  As an example of such intimidation, Paul Gatto's request for information regarding

his Sentry ESOP 2009 Account Statement was responded to with hostile yelling by boss of "it is

not your money, forget about it."  Defendants' scheme has apparently succeeded since Sentry

has, upon information and belief, avoided making any distribution of any property -- including

distributions based on the exercising of any option in Mayrich stock -- to any Sentry ESOP

participant in the over ten years this retirement plan has been in existence.

      68.    The Sentry ESOP plan participants, current and former, have between zero and a

one hundred percent vested entitlement to the funds in their respective Sentry ESOP account.

Upon information and belief, each Sentry ESOP participant is entitled to withdraw her or his vested funds, *inter alia*, upon retiring from Mayrich or reaching the age of fifty-five.   Upon information and belief, none of the Sentry ESOP participants entitled to withdraw their vested funds have received these funds due to Defendants active concealment of the existence of the Sentry ESOP from its participants, and by such purposeful concealment, Defendants have converted the Sentry ESOP participants' personal property by assuring this property would not be claimed by their rightful owners.

69.   For example, despite the fact that Paul Gatto retired from Mayrich, and that Richard Shaw indicated to Paul Gatto that he is entitled to his account funds, Paul Gatto's requests to withdraw funds from his Sentry ESOP account have been ignored.   Paul Gatto has not even been able to obtain from Sentry a summary plan description for the Sentry ESOP, financial statements for the Sentry ESOP, or his most recent account statement for his Sentry ESOP account, each of which Paul Gatto is required to receive automatically under Title 29, Chapter 18.   Paul Gatto's attempt to even discuss his Sentry ESOP account was met with hostility by Richard Giacopelli who advised him it was not his money and to forget about his account.   Similarly, Robert Smith received a statement indicating he has approximately $64,000 in his Sentry ESOP retirement account; and despite Robert Smith retiring from Mayrich on March, 2012, he has never received any of these funds nor been provided any information on how he can obtain access to these funds.

70.   By reason of the foregoing, the Class members are entitled to, *inter alia*, (i) withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their

Sentry ESOP account, (ii) prejudgment and post judgment interest, (iii) attorney's fees, and (iv) punitive damages in an amount not less than $100,000,000.

## COUNT IV
### FRAUD
### ALL DEFENDANTS

71.     Plaintiffs hereby repeat and re-allege the allegations contained in paragraphs 1 through 70 as if fully set forth herein.

72.     ESOPs produce a variety of tax benefits for an employer setting up such plans. ESOPs can also produce expenses to an employer in the form of contributions into the plan. Upon information and belief, the Sentry ESOP was created in 2003 and subsequently managed to provide tax benefits to various Defendants without the concomitant downside of ever paying out funds to its participants.

73.     The Sentry ESOP was established in 2003.  John Giacopelli is the administrator of the Sentry ESOP and Richard Giacopelli and Richard Shaw had roles in administering the Sentry ESOP as discussed, *inter alia*, in paragraphs 92 and 93, respectively.   Sentry was the entity through which the Sentry ESOP was operated and, upon information and belief, Mayrich along with Sentry, John Giacopelli, Richard Giacopelli, and/or John Does improperly enjoy the tax benefits of maintaining the Sentry ESOP while fraudulently concealing the existence of the Sentry ESOP from its participants in order to avoid making distributions to the Sentry ESOP participants which would have, as discussed in paragraph 66, diluted John Giacopelli, Joseph Scott, and Richard Giacopelli's ownership interest in Mayrich.   This fraudulent scheme has apparently succeeded since Sentry has, upon information and belief, avoided making any distribution of any property -- including distributions based on the exercising of any option in

Mayrich stock -- to any Sentry ESOP participant in the over ten years this retirement plan has been in existence.

74.   In furtherance of this alleged fraudulent scheme, despite the fact that the Sentry ESOP has been in existence since 2003, upon information and belief, none of its participants were ever informed of the existence of the Sentry ESOP until its existence was revealed by Mayrich's newly hired accountant who -- apparently unaware of Defendants scheme to hide the existence of the Sentry ESOP from its participants -- "mistakenly" issued the Sentry ESOP 2009 Account Statements to the Sentry ESOP participants.

75.   Despite the Sentry ESOP being in existence since 2003, and despite the numerous statutory notice obligations to plan participant, including, *inter alia*, that each participant receive a summary plan description, annual financial statements and schedules, and at least annual account statements, none of these were ever provided to any of the Sentry ESOP participants save for the apparently inadvertently distributed Sentry ESOP 2009 Account Statements.  Upon information and belief, Defendants fraudulent concealment of the Sentry ESOP from its participants likely resulted in those retiring before the inadvertent issuance of the Sentry ESOP 2009 Account Statement having absolutely no knowledge of the existence of this plan and Defendants continued active concealment and intimidation, as described in paragraph 67, after the issuance of the Sentry ESOP 2009 Account Statements has permitted Sentry to avoid making a single distribution to any Sentry ESOP participant in the over ten years that this ESOP has been in existence.  For example, even after Paul Gatto received his Sentry ESOP 2009 Account Statement and asked his boss Richard Giacopelli about this statement, Richard Giacopelli yelled at Paul Gatto to forget about the statement because it was not his money.

76.     The Sentry ESOP plan participants, current and former, have between zero and a one hundred percent vested entitlement to the funds in their respective Sentry ESOP account. Upon information and belief, each Sentry ESOP participant is entitled to withdraw her or his vested funds, *inter alia*, upon retiring from Mayrich or reaching the age of fifty-five.   Upon information and belief, none of the Sentry ESOP participants entitled to withdraw their vested funds have received these funds.  Having failed to receive almost any of the required notices and information regarding their accounts, most Sentry ESOP participants are probably unaware of the existence of their account, let alone the current status of their Sentry ESOP account or their rights regarding their Sentry ESOP account, including any right to withdraw property from their Sentry ESOP account.

77.     Defendants fraudulent acts include, upon information and belief, the following:

i.     failing to timely disclose the existence of the Sentry ESOP to its participants;

ii.     failing to provide a summary plan description for the Sentry ESOP to each of the Sentry ESOP participants;

iii.     failing to provide financial statements and schedules for the Sentry ESOP on an annual basis to the Sentry ESOP participants;

iv.     failing to provide an account statement to each Sentry ESOP participant at least annually;

v.     failing to provide any and all disclosures required to the Sentry ESOP participants under 29 U.S.C. § 1021 *et seq.*;

vi.     seeking to actively conceal the existence of the Sentry ESOP from its participants;

24

vii.    seeking to actively conceal the rights of Sentry ESOP participants to the vested funds in their accounts;

viii.    seeking to actively conceal the ability of Sentry ESOP participants whose accounts had vested funds and who were entitled to withdraw those funds from so withdrawing their funds; and

ix.    failing to transfer funds to Sentry ESOP participants when their vested funds became available to them for withdrawal.

78.    Hence, upon information and belief, Defendants intended the Sentry ESOP participants to be deceived into believing that they did not have any account at the Sentry ESOP. The Sentry ESOP participants were in fact deceived into believing that they did not have any account at the Sentry ESOP. The Sentry ESOP participants have been harmed by having the property in their Sentry ESOP accounts concealed and withheld from them, and information regarding the Sentry ESOP withheld from them, thus preventing participants from taking steps to secure their rights under this retirement plan, including securing their rights to the property in their Sentry ESOP account.

79.    By reason of the foregoing, the Class members are entitled to, *inter alia*, (i) withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their Sentry ESOP account, (ii) prejudgment and post judgment interest, (iii) attorney's fees, and (iv) punitive damages in an amount not less than $100,000,000.

**COUNT V**
**CONSPIRACY TO COMMIT FRAUD**
**ALL DEFENDANTS**

80.     Plaintiffs hereby repeat and re-allege the allegations contained in paragraphs 1 through 79 as if fully set forth herein

81.     The allegations in paragraphs 72 through 78 constitute conspiracy to commit fraud.

82.     By reason of the foregoing, the Class members are entitled to, *inter alia*, (i) withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their Sentry ESOP account, (ii) prejudgment and post judgment interest, and (iii) punitive damages in an amount not less than $100,000,000.

**COUNT VI**
**GROSS NEGLIGENCE**
**ALL DEFENDANTS**

83.     Plaintiffs hereby repeat and re-allege the allegations contained in paragraphs 1 through 82 as if fully set forth herein

84.     The allegations in paragraphs 72 through 78 constitute gross negligence.

85.     By reason of the foregoing, the Class members are entitled to, *inter alia*, (i) withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their Sentry ESOP account, (ii) prejudgment and post judgment interest, (iii) attorney's fees, and (iv) punitive damages in an amount not less than $100,000,000.

## COUNT VII
### 29 U.S.C. § 1109 AND/OR BREACH OF FIDUCIARY DUTY
### ALL DEFENDANTS

86.     Plaintiffs hereby repeat and re-allege the allegations contained in paragraphs 1 through 85 as if fully set forth herein.

87.     Pursuant to 29 U.S.C. § 1109: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

88.     There are numerous fiduciary duties enumerated in 29 U.S.C. § 1101 *et seq.* which govern the conduct of fiduciaries of the Sentry ESOP including 29 U.S.C. § 1104(a)(1) which provides, *inter alia*, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and … for the exclusive purpose of … providing benefits to participants and their beneficiaries."

89.     A plan fiduciary's duties of loyalty and prudence includes a duty to disclose and inform.  This duty entails:  (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries. The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the

27

interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

90.     Title 29 U.S.C. § 1002(21)(A) makes a person (including a judicial person such as Sentry and Mayrich) a fiduciary "to the extent ... he [i] exercises any discretionary authority or discretionary control respecting management of such plan … [ii] exercises any authority or control respecting management or disposition of its assets.... [iii] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or … [iv] has any discretionary authority or discretionary responsibility in the administration of such plan."

91.     As the Administrator and Plan Sponsor of the Sentry ESOP, John Giacopelli is a fiduciary of the Sentry ESOP.

92.     Richard Giacopelli had a role in administering the Sentry ESOP, including advising Paul Gatto with reference to the vested funds in his Sentry ESOP account that "it is not your money, forget about it," and therefore, upon information and belief, had some degree of discretionary authority or discretionary control respecting management of the Sentry ESOP, had some degree of authority or control respecting management or disposition of the Sentry ESOP's assets, and/or had some degree of discretionary authority or discretionary responsibility in the administration of the Sentry ESOP.  Richard Giacopelli was, upon information and belief, a fiduciary of the Sentry ESOP.

93.     Richard Shaw had a role in administering the Sentry ESOP including indicating to Paul Gatto that he was eligible to withdraw his vested funds and advising Paul Gatto he would call him back regarding same.  Paul Gatto was advised by Mayrich that Richard Shaw was involved in the creation and management of the Sentry ESOP.  Richard Shaw, upon information

and belief, rendered investment advice for a fee or other compensation, direct or indirect, with respect to any of the property of the Sentry ESOP, or had some degree of authority or responsibility to do so, as well as rendering advice regarding the creation of the Sentry ESOP. Further, upon information and belief Richard Shaw had some degree of discretionary authority or discretionary control respecting management of the Sentry ESOP, had some degree of authority or control respecting management or disposition of the Sentry ESOP's assets, and/or had some degree of discretionary authority or discretionary responsibility in the administration of the Sentry ESOP. Richard Shaw was, upon information and belief, a fiduciary of the Sentry ESOP.

94.     Sentry was the entity through which the Sentry ESOP was operated and, upon information and belief, Defendants sought to financially benefit from concealing the existence of the Sentry ESOP from its participants. Sentry and Mayrich, upon information and belief, thus had some degree of discretionary authority or discretionary control respecting management of such plan, had some degree of authority or control respecting management or disposition of its assets, and/or had some degree of discretionary authority or discretionary responsibility in the administration of such plan, and were also therefore each a fiduciary of the Sentry ESOP.

95.     The Defendants breached their fiduciary duties to the Sentry ESOP participants as described in paragraphs 46-55, 58-62, 65-69, and 72-78 and by, upon information and belief:

      i.     failing to timely disclose the existence of the Sentry ESOP to its participants;

      ii.     failing to provide a summary plan description for the Sentry ESOP to each of the Sentry ESOP participants;

      iii.     failing to provide financial statements and schedules for the Sentry ESOP on an annual basis to the Sentry ESOP participants;

iv.     failing to provide an account statement to each Sentry ESOP participant at least annually;

v.     failing to provide any and all disclosures required to the Sentry ESOP participants under 29 U.S.C. § 1021 *et seq.*;

vi.     seeking to actively conceal the existence of the Sentry ESOP from its participants;

vii.     seeking to actively conceal the rights of Sentry ESOP participants to the vested funds in their accounts;

viii.     seeking to actively conceal the ability of Sentry ESOP participants whose accounts had vested funds and who were entitled to withdraw those funds from so withdrawing their funds;

ix.     failing to transfer funds to Sentry ESOP participants when their vested funds became available to them for withdrawal;

x.     refusing to provide information regarding the Sentry ESOP plan even after demand for same from Sentry ESOP participants; and

xi.     refusing to transfer vested funds due to a Sentry ESOP participant even after demand for same.

96.    Defendants' misconduct, as outlined above, resulted in damages to the Class members, and pursuant to 11 U.S.C. § 1109, each of the Defendants is "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

97. By reason of the foregoing, the Class members are entitled to, *inter alia*, (i) damages resulting from Defendants breach of the fiduciary duties enumerated in 29 U.S.C. § 1101 *et seq.* in an amount to be determined at trial,  (ii) have each Defendant held personally liable for all damages caused by any breach of fiduciary duty pursuant to 11 U.S.C. § 1109, (iii) damages resulting from Defendants breach of state law fiduciary duties in an amount to be determined at trial, (iv) withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their Sentry ESOP account, (v) prejudgment and post judgment interest, (vi) attorney's fees, and (vii) punitive damages in an amount not less than $100,000,000.

## COUNT VIII
### NEGLIGENT MISREPRESENTATION
### ALL DEFENDANTS

98. Plaintiffs hereby repeat and re-allege the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

99. The allegations described in paragraphs 91 through 96 constitute negligent misrepresentation.

100. By reason of the foregoing, the Class members are entitled to, *inter alia*, (i) withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their Sentry ESOP account, (ii) damages resulting from Defendants negligent misrepresentation in an amount to be determined at trial, (iii) prejudgment and post judgment interest, and (iv) punitive damages in an amount not less than $100,000,000.

## COUNT IX
### DECEPTIVE BUSINESS PRACTICES
### ALL DEFENDANTS

101.    Plaintiffs hereby repeat and re-allege the allegations contained in paragraphs 1 through 100 as if fully set forth herein.

102.    Defendants' practice of concealing the existence of the Sentry ESOP from its participants was misleading in a material respect.

103.    Defendants' practice of failing to provide statutory required account information and notices to Sentry ESOP participants was misleading in a material respect.

104.    Defendants' practice of not providing vested property to Sentry ESOP participants or informing them of their rights to withdraw this property was misleading in a material respect.

105.    Defendants misleading practices resulted in injury to the Class members who have had pertinent information regarding their Sentry ESOP accounts, indeed the very existence of these accounts, concealed from them such that they have not been able to properly take action to protect their rights and entitlements under the Sentry ESOP and have not or would not have had access to their retirement funds as they became or would become available for withdrawal.

106.    By reason of the foregoing, the Class members are entitled to, *inter alia*, (i) withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their Sentry ESOP account, (ii) damages resulting from Defendants' deceptive business practice in an amount to be determined at trial, (iii) prejudgment and post judgment interest, (iv) attorney's fees, (v) treble damages, and (vi) punitive damages in an amount not less than $100,000,000.

**COUNT X**
**RICO**
**ALL DEFENDANTS**

107.   Plaintiffs hereby repeat and re-allege the allegations contained in paragraphs 1 through 106 as if fully set forth herein.

108.   John Giacopelli, Richard Giacopelli, Richard Shaw, Mayrich, Sentry, and potentially other individuals, such as Joseph Scott, (the "Enterprise") have, upon information and belief, committed acts which are indictable under, *inter alia*, 18 U.S.C. § 664 ("Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both."), 18 U.S.C. § 1341 (relating to mail fraud), and 18 U.S.C. § 1343 (relating to wire fraud), by the Enterprises ongoing scheme spanning over ten years by which the Enterprise has converted and continues to seek to convert the property of the Sentry ESOP participants as further explained in paragraphs 46-55, 58-62, 65-69, 72-78, and 91-96, and by multiple instances of mail and wire fraud specifically directed at its racketeering activity of diverting and converting Sentry ESOP participant funds which include *inter alia* filing an Annual Report/Form 5500 with the Internal Revenue Service, Department of Labor and Penson Benefit Guaranty Corporation which indicates that the Sentry ESOP was being maintained for the benefit of the Sentry ESOP participants when in reality no retirement funds were ever distributed to any Sentry ESOP participant in its over ten year existence and the existence of the Sentry ESOP was being actively concealed from its participants, save for the inadvertently distributed Sentry ESOP 2009 Account Statements.  Further, Richard Shaw is located in California and, upon information and belief, had

33

communications with other members of the Enterprise across state lines in furtherance of the fraudulent scheme outlined in paragraphs 46-55, 58-62, 65-69, 72-78, and 91-96.  Moreover, the foregoing scheme was, upon information and belief, purposely designed and managed in the fraudulent manner described the paragraphs 46-55, 58-62, 65-69, 72-78, and 91-96 in order to obtain improper tax deductions in violation of numerous sections of Title 18 of the United States Code governing tax evasion and fraud.

109.    Upon information and belief, the foregoing pattern of racketeering activity spanning over ten years, involving dozens if not hundreds of fraudulent filings with various Federal agencies and the active concealment of the Sentry ESOP from well over a hundred if not hundreds of current and former Sentry ESOP participants, is ongoing; and the Enterprise has an existence independent of its racketeering activities, in the form of, *inter alia*, Mayrich's constructions business.

110.    By reason of the foregoing, the Class members are entitled to, *inter alia*, (i) withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their Sentry ESOP account, (ii) damages resulting from Defendants violation of civil RICO in an amount to be determined at trial, (iii) prejudgment and post judgment interest, (iv) attorney's fees, (v) treble damages, and (vi) punitive damages in an amount not less than $100,000,000.

### COUNT XI
#### SPECIFIC PERFORMANCE

111.    Plaintiffs hereby repeat and re-allege the allegations contained in paragraphs 1 through 110 as if fully set forth herein.

112.    The Class members each have an account at the Sentry ESOP each of which has a vested value of between zero to one hundred percent.

113.    Defendants have wrongfully withheld the property of the Class members.

114.    Plaintiffs have made repeated demands for the withdrawal of the property in their Sentry ESOP accounts and have not received any response.

115.    Defendants continue to wrongfully exert control over the Sentry ESOP participant property, which are the rightful personal property of Sentry ESOP participants and which remain in the possession of Defendants, and if specific performance requiring Defendants to turn over control to the Sentry ESOP participants any property in their accounts is not granted, these funds may be lost.  Plaintiffs hereby plead in the alternative that they have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment granting the following relief:

A.  certification of the action as a Class Action pursuant to the Federal Rule of Civil Procedure 23, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B.  declaration that the Class members may withdraw the value of any property currently located or reflected in their Sentry ESOP account or obtain damages equal to the value of any property previously located or reflected in their Sentry ESOP account;

C.  declaration that the Class members are entitled to damages equal to any additional property that would have been or would be in any Class member's ESOP account but for Defendants' violation of any federal or state law;

D.  declaration that John Giacopelli must pay each Class member $100 per day for each day that each account statement such Class member is entitled to receive has been overdue, as well as any further relief the Court deems proper;

E.  declaration that John Giacopelli must pay each Class member $100 per day for each day that each notice referenced in 29 U.S.C. § 1132(c)(1) and (c)(3) and required to be provided to the Sentry ESOP participants is overdue, as well as any further relief the Court deems proper;

F.  declaration that Defendants have violated the duties, responsibilities and obligations imposed upon them as fiduciaries;

G. money damages in an amount to be determined at trial;

H. punitive damages in an amount not less than $100,000,000;

I. treble damages;

J. equitable relief as may be just and proper to provide complete relief to the Class members;

K. prejudgment and post judgment interest;

L. statutory attorney's fees and costs; and

M. such other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated:   August 14, 2013
         New York, New York

LAW OFFICE OF AARON SIRI

_____
Aaron Siri
120 East 31st Street
New York, New York 10016
Tel: (212) 532-1091

*Attorneys for Plaintiffs*